# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

L. H. H., a minor, by and through his )
mother and next friend, ESMERALDA )
HOLMAN HERNANDEZ, )
      Plaintiff, )
       )
    v. )   Cause No.: 2:13-CV-452-PRC
       )
GERALD HORTON, ANGELO BRADSHAW, )
CITY OF GARY, INDIANA, and GARY )
COMMUNITY SCHOOL CORPORATION, )
      Defendants. )

## OPINION AND ORDER

This matter is before the Court on an Affidavit of Fees [DE 36], filed by Plaintiff on February 2, 2015. The affidavit was filed pursuant to this Court's January 23, 2015 Order that Plaintiff was entitled to reasonable attorney fees and costs incurred in bringing a November 4, 2014 Motion to Compel. Defendants Gerald Horton, Angelo Bradshaw, and Gary Community School Corporation filed a response on February 19, 2015. (Defendant City of Gary did not file a response.) And Plaintiff filed a reply on March 2, 2015.

Plaintiff's attorney asks for $1,450 in attorney fees. The objecting Defendants contend that no award of fees is warranted and, alternatively, that both the rate ($500 per hour) and the amount of time spent (2.9 hours) are excessive. The first objection is not well taken. As the Court noted in its January 23, 2015 Order, the issue before the Court at this point is not *whether* fees are warranted, but rather the appropriate *amount* of those fees.

Reasonable attorney fees under Rule 37 are calculated using the "lodestar" method, which is a reasonable hourly rate multiplied by the hours reasonably expended. *Johnson v. GDF, Inc.*, 668 F.3d 927, 929 (7th Cir. 2012); *Gautreaux v. Chi. Housing Auth.*, 491 F.3d 649, 659 (7th Cir. 2007)

("In calculating reasonable attorneys' fees, the district court should first determine the lodestar amount by multiplying the reasonable number of hours worked by the market rate." (quoting *Bankston v. State of Ill.*, 60 F.3d 1249, 1255 (7th Cir. 1995)).

**I. Reasonable Rate**

A reasonable rate is one "derived from the market rate for the services rendered." *Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 640 (7th Cir. 2011) (quoting *Denius v. Dunlap*, 330 F.3d 919, 930 (7th Cir. 2003)). The market rate is defined as the rate for the relevant type of work normally charged by a lawyer of similar ability and experience in the community. *See Gautreaux*, 491 F.3d at 659.

"The fee applicant bears the burden of 'produc[ing] satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community.'" *Pickett*, 664 F.3d at 640 (quoting *Blum v. Stenson*, 465 U.S. 886, 895 n. 11 (1984)). "If the fee applicant satisfies this burden, the burden shifts to the other party to offer evidence that sets forth 'a good reason why a lower rate is essential.'" *Id.* (quoting *People Who Care v. Rockford Bd. of Educ.*, 90 F.3d 1307, 1313 (7th Cir. 1996) (quoting *Gusman v. Unisys Corp.*, 986 F.2d 1146, 1151 (7th Cir.1993))).

*1. Has Attorney Feuer Met His Initial Burden?*

In figuring out whether an fee applicant has met the initial burden, the Court must first consider whether there is sufficient evidence to conclude that the attorney actually charges the amount he says he does for this type of work. *Mathur v. Bd. of Trustees of S. Illinois Univ.*, 317 F.3d 738, 743 (7th Cir. 2003). If there is enough evidence to reach this conclusion, the burden has been met. *Id.*; *Pickett*, 664 F.3d at 640 ("We presume that an attorney's actual billing rate for similar

litigation is appropriate to use as the market rate." (citing *Denius*, 330 F.3d at 930)).

Attorney Feuer's affidavit represents that he has been practicing law since 1984, primarily in the Chicago area, and that his current billing rate is $500 per hour for civil rights cases such as this one, which he believes is commensurate with the rate charged by other Chicago-area attorneys with similar experience and skill. He explains that, eleven years ago, when he was a partner at a large Chicago law firm, his rate was $350 per hour, and he believes that, had he stayed there, his current rate would be over $500 per hour. He also points to a recent order issued by the United States District Court for the Northern District of Illinois, approving a $500-per-hour rate for work he did in 2010 on a civil rights case. *See McDonough v. Briatta*, 935 F. Supp. 2d 897, 903 (N.D. Ill. 2013).

The objecting Defendants point out that Feuer's evidence relates to Illinois, not to Indiana, contending that, in the Northern District of Indiana, $250 per hour is a reasonable rate. In other words, they argue that Feuer's rate is out of step with the rate prevailing in the community in which this Court sits. The objection fails. To begin with, the Seventh Circuit Court of Appeals has held that it is equally plausible to read "community" as referring to a community of practitioners instead of, as the objecting Defendants suggest, a local market area. *Jeffboat, LLC v. Dir., Office of Workers' Comp. Programs*, 553 F.3d 487, 490 (7th Cir. 2009); *cf. Lane v. Piper Jaffray Companies*, No. 01C925, 2005 WL 1229388, at *2 (E.D. Wis. May 24, 2005) ("In *Mathur*, the Seventh Circuit noted that the presumed applicable market rate is that of the lawyer's legal community."). And even if "community" means the local market, it is not as if Feuer is from some far-flung locale. Many litigants before this Court hire Chicago attorneys, who presumably charge Chicago rates. And Gary, Indiana, where this case originated, lies only a few miles east of the city limits of Chicago. Likewise,

the Hammond Division of this Court, where this case was filed, sits only a few hundred feet from the Illinois state line.

Regardless, as the *Mathur* court explained, "[o]nly if an attorney is unable to provide evidence of her actual billing rates should a district court look to other evidence, including 'rates similar experienced attorneys in the community charge paying clients for similar work.'" *Id.* (quoting *People Who Care*, 90 F.3d at 1311). By providing evidence, especially the district court opinion, that he actually gets paid $500 per hour in similar cases, albeit cases in Illinois, Feuer has met his initial burden.[1] The Court must therefore turn to consider whether the objecting Defendants' evidence demonstrates that a lower rate is essential. *Pickett*, 664 F.3d at 640; *see also Gusman*, 986 F.2d at 1151.

## *2. Have the Objecting Defendants Shown that a Lower Rate is Essential?*

The objecting Defendants argue that Feuer's proposed rate is excessive and imposes a severe penalty. As mentioned, they contend that in this district $250 per hour, one-half of Feuer's asked-for rate, is reasonable. This contention is unsupported as their brief does not point to anything but their own say-so about what a reasonable fee is. This notwithstanding, $500 per hour does seem higher than average for work done in this District.

However, just because a lawyer's "proffered rate is higher than the local rate does not mean that a district court may freely adjust that rate downward." *Mathur*, 317 F.3d at 743; *see also Gusman*, 986 F.2d at 1151 (7th Cir. 1993) ("A judge who departs from this presumptive rate must have some reason other than the ability to identify a different average rate in the community."). Likewise, "district courts should defer to the out-of-town attorney's rate when calculating the

---

[1] The objecting Defendants also appear to suggest that Feuer's evidence is internally inconsistent since he used to charge $350 per hour. However, as Feuer points out, this was his rate more than a decade ago.

4

lodestar amount." *Mathur*, 317 F.3d at 744. Nevertheless, if local attorneys could have done the job just as well, the court has discretion to award (or not to award) "an hourly rate which local attorneys would have charged for the same service." *Id.* (quoting *Chrapliwy v. Uniroyal, Inc.*, 670 F.2d 760, 768 (7th Cir. 1982)); *see also Jeffboat*, 553 F.3d at 490.

The underlying Motion to Compel was simple. Plaintiff contended that he hadn't gotten timely responses to written discovery despite informal attempts and extensions of time. The Defendants never filed a response to the motion, and the Court granted it. But while this work perhaps did not require the level of experience and skill Feuer claims to bring to this case, it is only a small part of it. The Court declines to speculate as to the overall complexity of this matter, especially as it is still in the discovery phase. Moreover, it appears that Plaintiff would have paid the same for this as for more difficult work.

For these reasons, the Court concludes that the objecting Defendants have not met their burden of showing that a lower rate is essential. The Court declines to exercise its discretion to reduce attorney Feuer's hourly rate.

**II. Reasonable Hours**

Feuer represents that he worked a total of 2.9 hours on the motion. This breaks down to 1.3 hours spent reviewing the relevant email correspondence with opposing counsel, drafting the motion and accompanying Rule 37 certificate and proposed order, as well as drafting an email to opposing counsel. He represents that he spent .1 hour reviewing this Court's order on the Motion to Compel, which directed a second round of briefing on whether attorney fees were warranted. After this, he represents that he spent .4 hour reviewing Defendants' objections to an award of attorney fees, .8 hour drafting a response to those objections, and .3 hour reviewing Defendants' reply briefs.

5

The objecting Defendants contend that he should be reimbursed only for the time spent resolving the discovery dispute (1.3 hours) and not the time spent reviewing the Court's Order on the Motion to Compel or the time he spent working on the attorney fees issue (1.6 hours). Plaintiff counters that this subsequent work was necessarily incurred in conjunction with the original Motion to Compel and is thus reasonable.

The Court begins its analysis with the text of the Rule, which provides that

> If the motion [to compel] is granted—or if the disclosure or requested discovery is provided after the motion was filed—the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees.

Fed. R. Civ. P. 37(a)(5)(A).

At issue is the phrase "incurred in making the motion." *Id.* The phrase could be read to support Defendants' contention since the fee petition was brought *after* Plaintiff made the original motion. Further, the text of Rule 37(a)(5) contrasts with other, broader provisions of Rule 37, which award the prevailing party all fees "caused by" the losing party's conduct. *See* Fed. R. Civ. P. 37(b), (c), (d), and (f).

The Seventh Circuit Court of Appeals, however, has rejected a bright line distinction between work done on the motion proper and later, but necessary, work. Thus, in *Rickels v. City of S. Bend, Ind.*, the court refused to accept the notion that Rule 37(a)(5)'s fee shifting provision applied to "only the expenses incurred *prior* to the ruling on the motion," explaining that doing so would undermine the purpose of fee shifting, namely, "that the victor should be . . . as well off as if the opponent had respected his legal rights in the first place." 33 F.3d 785, 787 (7th Cir. 1994). Likewise, the court in *Tamari v. Bache & Co. (Lebanon) S.A.L.*, said—in dicta—that "Rule 37(a)

sanctions 'should encompass all expenses, whenever incurred, that would not have been sustained had the opponent conducted itself properly.'" 729 F.2d 469, 474 (7th Cir. 1984) (quoting *Aerwey Labs., Inc. v. Arco Polymers, Inc.*, 90 F.R.D. 563, 565–66 (N.D. Ill. 1981)); *see also Catapult Commc'ns Corp. v. Foster*, No. 06 C 6112, 2009 WL 2707040, at *2 (N.D. Ill. Aug. 25, 2009) ("[A]ttorneys' fees incurred in bringing fee petitions are recoverable under Rule 37.").

Case law from outside this judicial circuit also supports this approach. For example, the Sixth Circuit Court of Appeals recently considered a similar textual issue and reached an analogous conclusion. *See McCarthy v. Ameritech Pub., Inc.*, 763 F.3d 488, 493 (6th Cir. 2014). *McCarthy* considered that the language of Rule 37(c)(2), which requires the court to award costs and fees on request when a party is forced to go to the trouble of proving something that an opponent refused to admit under Rule 36. Fed. R. Civ. P. 37(c)(2). The Rule provides that the prevailing side is entitled to the costs and fees "incurred in making that proof." *Id.* The *McCarthy* court acknowledged that this language differed from the "caused by" language found elsewhere in Rule 37(c), but nevertheless concluded that "[i]n light of the overlapping purposes of the assorted provisions of Rule 37, it would be incongruous to interpret Rule 37(c)(2) to bar district courts from awarding reasonable fees and expenses associated with the preparation and presentation of fee applications." *Id.*; *see also In re Stauffer Seeds, Inc.*, 817 F.2d 47, 50 (8th Cir. 1987); *Hicklin Eng'g, L.C. v. Bartell*, 439 F.3d 346, 351 (7th Cir. 2006) (holding that the district court acted properly in awarding Rule 37(c)(2) fees for work done filing and briefing a motion for attorney fees).

Though these cases emphasize the Rule's purpose, their conclusions are also consistent with its text. There is some inherent ambiguity in the phrase "making the motion" as used in Rule 37(a) since neither the phrase itself, nor the Rule generally, says much about what tasks are part of making

7

a motion and which, though ancillary and related, are not. *See* Fed. R. Civ. P 37. Here, context and usage suggest that the language refers to more than just the work done in putting together and filing the actual motion. Reading it otherwise would exclude, not only fee petitions, but also a moving party's reply brief, which, after all, would be written *after* the motion was made. This result borders on absurdity. Thus, the question is not *whether* actions beyond the drafting and filing of the motion qualify as part of "making the motion," but rather *which* actions do.

It might be argued that attorney fees should be available only for work done on the *substance* of the motion, but not on other matters such as a fee petition. As mentioned above, this is a plausible position. *See Michigan Millers Mut. Ins. Co. v. Westport Ins. Corp.*, No. 1:14-CV-151-PLM, 2014 WL 5810309, at *5 n. 5 (W.D. Mich. Nov. 7, 2014) (ruling that attorney fees were not proper for work done on an affidavit of fees filed after the underlying Rule 37 motion had been ruled on). But it isn't the *only* plausible position. Attorney fees are an issue that a court must decide whenever it considers a motion brought under Rule 37(a). Thus, discussing the issue is nearly as necessary for the parties to the discovery dispute as making a reply brief is for a moving party. Indeed, the issue is often litigated in the original motion, not, as here, in a subsequent round of briefing. It is thus plausible to conclude, as seems mandated by the reasoning in *Rickles*, that the briefing on the attorney fee issue is part of the work done in "making the motion." 33 F.3d at 787. Thus, the Court concludes that Rule 37 does not prevent recovery of fees resulting from the time spent reviewing the Court's Order on the Motion to Compel or the work done on the fee petition briefing.

The objecting Defendants do not raise any other arguments about the hours expended, and the Court concludes that the 2.9 hour total is reasonable.

### III. Conclusion

The lodestar amount is thus $1,450 (2.9 hours x $500/hr). "There is a strong presumption that the lodestar calculation yields a reasonable attorneys' fee award." *Pickett*, 664 F.3d at 639 (citing *Perdue v. Kenny A.*, 559 U.S. 542, 552 (2010); *Eddleman v. Switchcraft, Inc.*, 927 F.2d 316, 318 (7th Cir. 1991)). Though the objecting Defendants contend that they engaged in good faith efforts to resolve "any and all discovery disputes," the record shows that they have been slow to communicate and slow to comply. DE 39 at 3. Moreover, the award is quite small in the larger scheme of this case. The Court sees no further reason why the lodestar rate should be reduced and accordingly **ORDERS** Defendants to pay Plaintiff $1,450 in attorney fees within a reasonable time.

SO ORDERED this 10th day of March, 2015.

                                             s/ Paul R. Cherry  
                                             MAGISTRATE JUDGE PAUL R. CHERRY  
                                             UNITED STATES DISTRICT COURT

cc:    All counsel of record